UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE EUGENE TASSEY,<br><br>    Plaintiff,<br><br>    v.<br><br>CALIFORNIA DEPARTMENT OF TRANSPORTATION (CALTRANS), et al.,<br><br>    Defendants. | Case No. 23-cv-05041-AMO<br><br>**ORDER DISSOLVING TEMPORARY RESTRAINING ORDER; DENYING MOTION FOR PRELIMINARY INJUNCTION** |

    Pro se Plaintiff Jesse Eugene Tassey is unhoused and currently lives at a small camp on Caltrans property. ECF 1 at 1, 14. On September 29, 2023, Caltrans posted a notice to vacate at Tassey's location. *Id.* at 18. Tassey filed an ex parte application for a temporary restraining order and preliminary injunction and complaint for injunctive relief on October 2, 2023. *Id.* at 1-18. The next day, the Court set a briefing schedule, held a hearing, and issued a temporary restraining order prohibiting Caltrans from proceeding with the planned removal of persons, personal possessions, and structures from Tassey's camp. ECF 5; ECF 8; ECF 11 at 5. The Court also issued an order to show cause as to whether a preliminary injunction should be entered for relief beyond October 18, 2023 and set a hearing for October 17, 2023. ECF 11 at 6. The parties filed their responses to the order to show cause on October 13, 2023. ECF 16, 17, 18. Because Caltrans did not include a certificate of service with its response, the Court found good cause to extend the temporary restraining order[1] and continued the hearing to October 23, 2023. ECF 19.

    Having reviewed the parties' responses to the order to show cause, carefully considered the relevant legal authority and the arguments made during the October 23, 2023 hearing on the

---

[1] Caltrans then served Tassey with a copy of its response to the order to show cause on October 17, 2023. ECF 21.

1  matter, the Court **DISSOLVES** the temporary restraining order and **DENIES** Tassey's motion for
2  a preliminary injunction.

**I.     BACKGROUND**

The following facts are as originally set forth in the Court's order granting Tassey's application for a temporary restraining order:

Tassey has lived alone in a small, isolated embankment on Caltrans property for the last eight months. ECF 1 at 1, 14. He has a small camp there, with food, clean water and shelter from extreme heat. *Id.* at 1, 6. It is the only place where his case manager, who is assisting Tassey with locating housing, can reach him. *Id.* at 1, 7. He does not have a phone, and he is afraid that leaving his camp will mean losing contact with his case manager. *Id.* at 7.

On September 29, 2023, Defendants posted a "Notice to Vacate Campsite" at Tassey's location. *Id.* at 2, 18. The Notice states that "Every person who camps or lodges or stores property on State property without permission of the owner is guilty of a misdemeanor violation of California law." *Id.* at 18. The Notice lists violations of California Penal Code § 647(e) and California Vehicle Code § 23112(b). Section 647(e) of the California Penal Code makes it a misdemeanor to "lodge[] in any building, structure, vehicle, or place, whether public or private, without the permission of the owner or person entitled to the possession or in control of it." Cal. Penal Code § 647(e). Section 23112(b) of the California Vehicle Code provides that "No person shall place, deposit, or dump, or cause to be placed, deposited, or dumped, any rocks, refuse, garbage, or dirt in or upon any highway, including any portion of the right-of-way thereof, without the consent of the state or local agency having jurisdiction over the highway." Cal. Veh. Code § 23112(b).

The Notice gives the following "Instructions to Occupants:"

1. ALL PERSONAL PROPERTY AND CAMP DEBRIS IS TO BE REMOVED BY THE TIME AND DATE NOTED BELOW.

2. ANY PERSONAL PROPERTY LEFT AT THIS SITE AFTER THIS TIME WILL BE CONSIDERED ABANDONED.

3. ANY PERSONAL PROPERTY NOT DISPOSED OF WILL BE STORED FOR SIXTY (60) DAYS. TO RECLAIM PROPERTY CALL: (707) 762-6641.

FAILURE TO RECLAIM BY SIXTY (60) DAYS FROM REMOVAL WILL RESULT IN ITS' DISPOSAL.

4. CONTINUED VIOLATIONS WILL RESULT IN CITATION AND/OR ARREST.

ECF 1 at 18 (capitalization in original). The "Vacate By Date" is October 1, 2023. *Id.* The "Removal Start Date" is October 2, 2023. *Id.* The "Removal End Date" is October 6, 2023. *Id.* The Notice states Community Service Assistance is available at the California Highway Patrol Marin Office and provides a contact phone number. *Id.*

Tassey has no other shelter and has not been offered any other shelter.[2] *Id.* at 11. He has a knee injury and states it will take him two weeks to find a new place to camp and move his belongings. *Id.* at 13. He requested that the Court issue a temporary restraining order so that (1) he would have time to relocate and (2) would be provided with storage for his belongings as required under California Civil Code § 2080. *Id.* at 15.

Tassey has yet to relocate. ECF 18 at 1. He states that he is still in the process of moving, that he is having difficulty moving bulky items because of his knee injury, and that he wants to make sure his bulky items are put in storage along with his other belongings. *Id.* He asks that the Court "keep or extend the October 18th deadline" because of his "injuries with [his] knee, titanium rods in [his] lower right leg, and [his] head injury." *Id.* at 2. He requests 72-hours' notice of any eviction action if the temporary restraining order is lifted. *Id.* He also seeks judicial notice of the National Weather Service forecast to show that it has been raining in Novato and more rain is projected for the week.[3] *Id.* at 1.

## II. LEGAL STANDARD

Plaintiffs seeking a preliminary injunction must show that (1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in their favor, and (4) an injunction is in the public interest. *Winter v.*

---

[2] Caltrans has now put forth evidence that Tassey declined shelter options offered on September 24, 2023 and September 27, 2023. *See* ECF 17 ¶ 7 & Ex. A

[3] The Court grants the request for judicial notice pursuant to Fed. R. Evid. 201(b).

*Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). With respect to the success on the merits and balance of harms factors, courts permit a strong showing on one factor to offset a weaker showing on the other, so long as all four factors are established. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). "Thus, when plaintiffs establish that the balance of hardships tips sharply in their favor, there is a likelihood of irreparable injury, and the injunction is in the public interest, they need only show 'serious questions' on the merits." *Where Do We Go Berkeley v. Cal. Dep't of Trans.*, 32 F.4th 852, 859 (9th Cir. 2022) (citation omitted). Moreover, the Ninth Circuit has held that "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Alliance for the Wild Rockies*, 632 F.3d at 1132.

## III. DISCUSSION

The Court analyzes each factor below, beginning with the risk of irreparable harm.

### A. Irreparable Harm

Tassey has not shown irreparable harm warranting a preliminary injunction. In granting the temporary restraining order, the Court found irreparable harm because "[a]bsent relief, Tassey risk[ed] losing his personal property, shelter, and access to food and clean water during a week expected to have multiple days of 90-degree weather." ECF 11 at 4. The Court also considered that "Tassey m[ight] lose contact with the case manager who is helping him secure housing because he has no phone or other means of contacting that person." *Id.* at 4-5.

These concerns have been mitigated. Tassey has now had two weeks—the exact amount of time he asked for and said he would need—to relocate. ECF 1 at 13; ECF 11 at 3 n.2. With respect to Tassey's belongings, Caltrans now provides the confirmation it was unable to give at the October 3, 2023 hearing:

> In compliance with the terms of the settlement and final judgment in *Sanchez v. California Department of Transportation*, Alameda County Superior Court Case No. RG16842117, Caltrans collects, labels and stores personal property of apparent value that is not a health or safety hazard for 60 days from the date of the cleanup of an encampment. Even if some of plaintiff'[s] property is damaged or if property deemed by Plaintiff[] to have value is destroyed as a result

4

of the encampment being removed, Plaintiff[] can be compensated
for the[] loss[.]

ECF 16 at 12 (italics added).[4]  In light of these developments, Tassey has not shown that he is likely to suffer irreparable harm if a preliminary injunction does not issue.  *Compare Blain v. Cal. Dep't of Trans.*, 616 F. Supp. 3d 952, 958 (N.D. Cal. 2022) ("Being exposed to safety and health threats by dint of governmental action with short notice meets the irreparable-injury element."), *order dissolved*, No. 3:22-CV-04178-WHO, 2022 WL 3702106 (N.D. Cal. Aug. 26, 2022).

### B.     Balance of Hardships

The balance of hardships has also shifted since the Court entered the TRO.  The Court previously found that this factor weighed sharply in Tassey's favor considering the risk of irreparable harm, the length of time Tassey lived at his camp, and the fact that he sought a temporary restraining order "only for the length of time needed for him to relocate."  ECF 11 at 5.  As discussed above, Tassey has now had that time, and Caltrans has confirmed that Tassey's belongings are subject to the protections set forth in the *Sanchez* settlement.

In addition, Caltrans describes significant safety concerns and environmental hazards that arise from Tassey's continued occupancy of Caltrans property.  ECF 16 at 14-16.  Kevin Sagar, a Code Compliance Officer with the Sonoma-Marin Area Rail Transit District, describes a "near-miss" incident that took place near Tassey's camp, which is located next to active railroad tracks.[5]  ECF 16-9 ¶¶ 1, 3, 6 & Ex. A.  According to Sagar, "[a] near miss . . . is when a trespasser is close enough to a track that the immediate action by the train crew of slowing, stopping, or sounding their train horn is necessary in order to avoid striking the trespasser."  *Id.* ¶ 5.  At 9:03 p.m. on June 27, 2023, Sagar received a report from a freight train crew member that a male trespasser was

---

[4] Caltrans asks that the Court take judicial notice of the final judgment and amended order on the defendants' motion for judgment on the pleadings in *Sanchez*.  ECF 16-2.  The Court grants the request pursuant to Federal Rule of Evidence 201(b).  *See United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980).

[5] Caltrans has also provided the declaration of Jason Fries, an expert in the fields of video reconstruction, video analysis, line of site analysis, forensic laser scanning, forensic animation, Human Factors (Use of force), and Photogrammetry to establish the camp's location, size, and general condition and proximity to railroad tracks.  ECF 16-3 ¶¶ 8, 12-16 & Exs. B - D.  His team also captured images of a man riding a bicycle along the railroad tracks near Tassey's camp.  *Id.* ¶ 15 & Ex. D.

wearing headphones and carrying items near the railroad crossing. *Id.* ¶ 3. The engineer reported sounding the bell on the train, and "the trespasser looked up at the last minute and moved out of the way." *Id.* At the time of the incident, "the freight train was operating with two locomotives and was hauling 780 tons and traveling at approximately 15 miles per hour (m.p.h.)." *Id.* ¶ 4. The engineer indicated "it would have taken the train over 1,000 feet to come to a complete stop." *Id.*

Following the incident, Sagar and a colleague visited the area. *Id.* ¶ 6. They observed shopping carts, a mini refrigerator, and other items next to the tracks inside the transit district's railroad right of way. *Id.* ¶¶ 7-8 & Ex. C. Sagar and his colleague also observed several propane tanks and other flammable materials on dry grass in an area that is difficult to access. *Id.* ¶ 18. They also noticed tire tracks in the railroad right of way and holes cut in the fence between the railroad tracks and camp. *Id.* ¶¶ 9, 11, 13 & Exs. D, E, F, G.

John O'Neill, a Caltrans Area Superintendent, adds that he has driven by Tassey's camp daily since late June 2023. ECF 16-17 ¶¶ 1, 4-6 & Ex. B. According to O'Neill, Tassey's camp is "located on and around the head wall" of the Rush Creek box culvert. *Id.* ¶ 8. The box culvert is "is a concrete channel, where the water from Rush Creek flows." *Id.* O'Neill explains that Caltrans has approved "remov[ing] vegetation (cat tails) that have accumulated around the box culvert to prevent flooding." *Id.* ¶ 9. To complete this work, Caltrans would need to park its vehicles and equipment on or around the concrete head wall, where Tassey's camp is located. *Id.* As a result, Caltrans cannot clear the overgrown vegetation around the box culvert. *Id.* ¶ 10. O'Neill states that the area is more than likely to flood if vegetation is not cleared to allow water to flow freely along the channel, and there are no barriers on the box culvert to prevent accidental slips, falls, or drowning. *Id.* ¶ 11. O'Neill also states that Tassey changed the slope of the embankment when he dug out an area for two cushioned loveseat chairs, which "will allow the water sheet flow to pool on the flattened or dug-out areas." *Id.* ¶¶ 13-14 & Ex. D. This "pooled water will cause the embankment to slip out or collapse" and "cause flooding in the area." *Id.* ¶ 14. Repairing these areas will cost between $5,000 and $6,000 and require heavy equipment, materials, staff, and at least four hours to move needed equipment to the affected location. *Id.* ¶ 15. Removing the camp will cost another $15,000 to $16,000. *Id.* ¶ 16.

In addition to flood risk, O'Neill describes the fire risk associated with Tassey's continued use of the camp. *Id.* ¶ 17. On October 4, 2023, O'Neill visited the encampment and observed that Tassey had an open fire. *Id.* O'Neill reports that at another homeless encampment, an open fire caused a severe fire that burned down the encampment and surrounding support for a bridge, even though the encampment was surrounded by dirt. *Id.* & Ex. F. According to O'Neill, Tassey's camp "poses a higher risk of starting a brush fire since it is surrounded by highly flammable, overgrown, dry vegetation." *Id.* ¶ 17. He adds that a fire at Tassey's camp could affect nearby structures, including the railroad tracks, freeway onramp, and surrounding businesses. *Id.*

Christopher Caputo, a Caltrans Environmental Program Manager and Acting Deputy District Director, also details water quality concerns due to the "very close proximity" of Tassey's camp to Rush Creek. ECF 16-1 ¶¶ 1, 10. Caputo explains that "Rush Creek flows into Black John Slough, and eventually the Petaluma River. Any waste runoff from this encampment has the potential to enter Rush Creek, which would pose environmental and health concerns to both humans and the natural environment." *Id.* In addition, Caputo states that "[t]he presence and uncontrolled nature of these pollutants, which are typical of homeless encampments, impedes the Department's ability to comply" with various requirements, include those imposed by the California State Water Resources Control Board and the San Francisco Regional Water Quality Control Board. *Id.* ¶¶ 6, 7, 11.

These concrete and undisputed risks of fire and flood, water contamination, and danger to human life shift the balance of equities in favor of Caltrans. *See Yesica Prado v. City of Berkeley*, No. 23-CV-04537-EMC, 2023 WL 6307921, at *9 (N.D. Cal. Sept. 27, 2023) (balance of hardships did not tip sharply in the plaintiff's favor where "enjoining abatement entirely would impose a hardship on both the encampment and the larger community the City represents because there are serious health and safety issues at the encampment that need to be addressed in a timely fashion").

C.    **Public Interest**

The Court also finds that the public interest weighs in favor of denying a preliminary injunction under the specific facts presented here. The Court's temporary restraining order aligned

7

1  with the public interest because it provided "'a stopgap to prevent a particular violation of
2  constitutional rights that result[ed] from the combination of lack of notice and failure to provide
3  alternative shelter.'"  ECF 11 at 5 (quoting *Blain*, 616 F. Supp. 3d at 955).  Tassey has now had
4  more than the length of time he requested to relocate.  Under these circumstances, the strong
5  public interest in abating the significant fire, flood, and health and safety hazards Caltrans has
6  detailed must take priority.  *See Prado*, 2023 WL 6307921, at *9 ("[T]here is . . . a strong public
7  interest in abating a significant hazard, and on a timely basis.").

### D. Likelihood of Success

Tassey has also not shown a likelihood of success on the merits.  Under 42 U.S.C. § 1983, Tassey asserts a state-created danger claim under the Fourteenth Amendment's Due Process Clause, a Fourth Amendment claim for unlawful seizure, a claim under the Takings Clause of the Fifth Amendment, an Eighth Amendment claim based on the Ninth Circuit's decisions in *Martin v. Boise*, 920 F.3d 584 (9th Cir. 2019) and *Johnson v. City of Grants Pass*, 72 F.4th 868 (9th Cir. 2023), and a claim for violations of procedural and substantive due process under the Fourteenth Amendment.  ECF 1 at 6-12.

In granting the temporary restraining order, the Court found that Tassey raised serious questions that:

> Defendants w[ould] violate his constitutional rights by forcing him to relocate or abandon his personal property on one business days' notice, without other available shelter, without clarity as to which of his belongings will be discarded and which will be stored, and without confirmation that safeguards previously imposed by a class action settlement would protect [his] property here.

ECF 11 at 3-4 (footnotes omitted).  As discussed above, the record now before the Court establishes that these concerns have been mitigated.  The likelihood of success factor, therefore, does not weigh in favor of granting a preliminary injunction.  *See Blain*, 616 F. Supp. 3d at 959 ("Between [the *Sanchez*] judicial decree and the several weeks of delay that the plaintiffs will have under this Order to remove their own possessions, the plaintiffs have not made a sufficient showing of the risk of an unconstitutional seizure."); *Prado*, 2023 WL 6307921, at *9 (finding that the plaintiffs had not shown a likelihood of success on the merits of their state-created danger or

unlawful seizure claims where the defendant offered alternative housing and moving assistance); *Spinks v. Cal. Dep't of Trans.*, No. 3:22-CV-05067-WHO, 2023 WL 2347422, at *6 (N.D. Cal. Mar. 2, 2023) (dismissing Eighth Amendment claim with prejudice where the complaint contained "no allegations connecting the facts of the complaint to the criminal process" and noting that "neither Caltrans nor its officials have authority to enforce criminal statutes"); *Cooley v. City of Los Angeles*, No. 2:18-cv-09053-CAS-PLAx, 2019 WL 1936437, at *5 (C.D. Cal. May 1, 2019) (dismissing Fifth Amendment claim where the plaintiff alleged that the seizure of "property was unlawful rather than a proper interference with plaintiffs' property requiring just compensation").

## IV. CONCLUSION

For the reasons set forth above, Tassey has not made the required showing under the four factors necessary for a preliminary injunction to issue. His motion for one is denied. The temporary restraining order issued October 4, 2023 is hereby dissolved. Caltrans may re-issue a notice to vacate and shall serve a copy of this order on Tassey.

**IT IS SO ORDERED.**

Dated: October 24, 2023

_____
**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**